**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **JOHN ROSS HOUSE ASSOCIATION, INC.,** | ) | |
| **Plaintiff,** | ) | **Case No._________________** |
| **v.** | ) | **JURY DEMAND** |
| **CITY OF ROSSVILLE, GEORGIA,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**

COMES NOW John Ross House Association, Inc. ("Plaintiff" or "JRHA"), by and through undersigned counsel, and files this Complaint against Defendant City of Rossville, Georgia ("Defendant" or "City"), for violations of 42 U.S.C. § 1983, declaratory judgment, and injunctive relief, and shows the Court as follows:

## NATURE OF THE ACTION

1. The artifact at issue is a two-story log house that is undisputedly the former house of historical figure and Cherokee Principal Chief John Ross, also known as Cooweescoowee (a rare bird).[1]

[1] Library of Congress, *Today in History – October 3: Chief John Ross*, https://www.loc.gov/item/today-in-history/october-03/ (last visited Sept. 9, 2026); *see also* James Mooney, *Myths of the Cherokee*, at 151 (1902), *available at* https://www.gutenberg.org/files/45634/45634-h/45634-h.htm.

2. Chief John Ross was elected the Principal Chief of the Cherokee Nation for thirty-eight (38) years, serving in the role longer than any other person. Chief John Ross was living in the subject House in Rossville, Georgia when the Cherokee people were forcibly removed in the summer of 1838, when he left Georgia to endure the Trail of Tears to Oklahoma with his people and Cherokee wife (who did not survive the journey). Chief John Ross legally and politically advocated for the rights of the Cherokee tribe throughout his life. He opposed the Treaty of New Echota, guided the Cherokee Nation throughout removal, helped craft the 1839 Constitution of the United Cherokee Nation, led the Cherokee Nation during the American Civil War, and advocated for the post-war Treaty of 1866 to secure permanent land rights. *See Id*.

3. This action arises from the City's initial and continuing physical taking and seizure of the Chief John Ross House (the "House"), the historic and culturally significant structure to which JRHA claims title and which JRHA has possessed, maintained, and stewarded for more than sixty years at its current location at the intersection of 200 East Lake Avenue and 212 Andrews Street in Rossville. In March 2026, the City removed JRHA's locks on the House doors and gates, applied City locks, posted "No Trespassing" signs, asserted ownership of the House and its contents, and suggested criminal prosecution of JRHA's officers and agents if they entered the House premises or removed contents without first

obtaining City permission. A true and accurate copy of the No Trespassing signs and city-controlled padlocks are attached hereto as **Exhibit A**.

4. JRHA brings claims under 42 U.S.C. § 1983 for violations of the Takings Clause of the Fifth Amendment, as applied to the City through the Fourteenth Amendment, the Fourth Amendment's prohibition against unreasonable seizures, and the Fourteenth Amendment's guarantee of procedural due process.

5. JRHA also seeks a declaration under 28 U.S.C. §§ 2201 and 2202, based on the parties' respective rights under Georgia law, that JRHA owns the House structure and that chain of title to the underlying land, including the City's acquisition and later conveyance of an interest in that underlying land, did not, by itself, transfer or vest title to the House in the City. JRHA further seeks preliminary and permanent injunctive relief restoring its lawful access to and control of the House and House contents, and JRHA requests that the City be barred from unlawfully restricting or encumbering JRHA's access to the House or its contents in any manner.

6. The City's longstanding desire to own the John Ross House is apparent. The City's formally adopted planning records show that ownership of the John Ross House was an identified municipal issue around and after 2013. In 2017, the City continued to list "Resolve ownership of the John Ross House" as underway with a projected completion date of 2020, and the Rossville City Council

formally adopted that comprehensive plan through Resolution No. 650. The City later reported the activity as "Complete," but before recently excluding JRHA from the House in March 2026, the City did not obtain or identify to JRHA a judicial determination resolving ownership of the House. *See* Walker County Joint Comprehensive Plan 2012–2032 (the "WCJCP 2012–2032"), Part II, Community Agenda, City of Rossville 2012–2016 Short Term Work Program, a true and accurate copy of the WCJCP 2012–2032 is attached hereto as **Exhibit B**; Walker County Joint Comprehensive Plan 2017 (the "WCJCP 2017"), City of Rossville Report of Accomplishments and Community Work Program 2017–2027, a true and accurate copy of the WCJCP 2017 is attached hereto as **Exhibit B-1**; 2022–2032 Walker County Joint Comprehensive Plan (the "WCJCP 2022–2032"), City of Rossville Report of Accomplishments, 2017–2021, a true and accurate copy of the WCJCP 2022–2032 is attached hereto as **Exhibit B-2**.

7. JRHA only claims ownership of the House structure, not the underlying land. The dispute concerns the separately claimed House structure and the City's assertion that its claimed property rights or control over the site entitle it to exercise exclusive ownership and control of the House. JRHA alleges the City enforced its position of rights or control through physical exclusion and threatened potential criminal prosecution without first obtaining lawful process resolving any competing rights of ownership.

## THE PARTIES

8. Plaintiff John Ross House Association, Inc. is a Georgia nonprofit corporation. Its principal office is located at 1316 Cloverdale Drive, Hixson, Tennessee 37343.

9. Defendant City of Rossville is a municipal corporation organized and existing under the laws of the State of Georgia and located in Walker County, Georgia. The City may be served through its Mayor, Jonathan Lassetter, at 400 McFarland Avenue, Rossville, Georgia 30741.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because JRHA's claims under 42 U.S.C. § 1983 arise under the Constitution and laws of the United States.

11. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 because an actual and justiciable controversy exists between JRHA and the City concerning ownership of the House, and the right to possess, access, maintain, and control it.

12. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related Georgia-law claims. These claims include those concerning title to the House; the parties' rights under the instruments governing the House and, separately, the underlying land; and the claims for relief under the Georgia

Constitution, because those claims form part of the same case or controversy as JRHA's federal claims.

13. This Court has personal jurisdiction over the City because it is a Georgia municipal corporation located within this district and the acts and omissions giving rise to JRHA's claims occurred within this district.

14. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because the City resides in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in Walker County, Georgia.

## FACTUAL BACKGROUND

### JRHA'S FORMATION, ACQUISITION OF THE HOUSE, AND THE GROUND-LEASE ARRANGEMENT

15. JRHA was incorporated as a Georgia nonprofit corporation on November 25, 1958, and remains in active compliance status.

16. The Internal Revenue Service recognized JRHA as an organization exempt under 26 U.S.C. § 501(c)(3) in 1959 and later reconfirmed that status. JRHA is currently in the process of reapplying for recognition of federal tax-exempt status.

17. JRHA was organized for the purpose of receiving the structure known as the Chief John Ross House, relocating it to a suitable site, restoring and preserving it, maintaining it for public access, and educating the public concerning Chief John Ross and the Cherokee Nation.

18. The Chief John Ross House is a two-story building made of hand-hewn lumber and a shake roof. Inside the building is a full feather down bed with wooden headboard and footboard, a small bed, a large dining room table with a full set of chairs, two (2) rocking chairs, two (2) assembled spinning wheels, one (1) unassembled spinning wheel, a loom, a large china cabinet, a pitcher with basin, a wooden trunk, tools, dishes, and other items of historic or cultural value to the House. The House and many of its individual contents are priceless, non-fungible, and irreplaceable artifacts.

19. The National Park Service ("NPS") has independently documented JRHA's role in the preservation history of the House. A 2007 NPS historical study reports that Gordon McFarland sold the property containing the House to Morgan Brothers in 1947, subject to an understanding that the House would not be torn down for twenty-five years. Jeff Bishop, Myth and History: The John Ross House Through Time, National Park Service (Apr. 2007), at 162 ("NPS Historical Study"). A true and accurate copy of the NPS Historical Study is attached hereto as **Exhibit C**.

20. The NPS Historical Study further reports that Neal and Preston Morgan, then owners of the House, wanted the House removed so the underlying land could be used for business development and agreed to donate the House to JRHA if the earlier restriction could be altered. (*See* Ex. B, at 162–64).

21. In 1962, Gordon K. McFarland and Neal Morgan entered into an agreement releasing the restriction against dismantling the House so that it could be relocated and authorizing Morgan to permit JRHA to remove the House from the property on which it then stood. A true and accurate copy of that agreement is attached hereto as **Exhibit D**.

22. In June 1962, Neal Morgan conveyed the Chief John Ross House structure to JRHA (the "Chief John Ross House Conveyance"). A true and accurate copy of the Chief John Ross House Conveyance is attached hereto as **Exhibit E**. The underlying Chief John Ross House Conveyance describes the conveyed real estate as the "old John Ross House lot" and separately identifies the dwelling on the premises as the "John Ross House," subject to a twenty-five-year restriction against dismantling, tearing down, or structurally altering the house. (*See* Ex. E).

23. The 1962 Chief John Ross House Conveyance did not convey to JRHA the land on which the House then stood; it only conveyed the House structure. It also contemplated JRHA's removal of the House.

24. The NPS Historical Study also reports that, in a 1959 written commitment concerning a replacement site, John L. Hutcheson, Jr. stated that property would be conveyed to Rossville Memorial Center ("RMC") and that the RMC would lease, free of charge, to JRHA the portion of the real property

required for the House's footprint and accessory buildings. (*See* Ex. B, at 164). The selected site for relocation of the House had a separate chain of title. On December 8, 1952, Peerless Woolen Mills conveyed five tracts to J. L. Hutcheson, Jr. and S. Lewis Hutcheson, including Tract No. 5, consisting of portions of Original Land Lots 9 and 10 in the Ninth District and Fourth Section of Walker County, by deed recorded in Deed Book 152, Page 589, in the Office of the Clerk of the Superior Court of Walker County, Georgia (the "<u>1952 Peerless Deed</u>"). On January 14, 1953, the Hutchesons conveyed to Roy H. Anderson an undivided one-fifth interest in Tracts Nos. 1 through 5 described in the 1952 Peerless Deed by deed recorded in Deed Book 161, Page 433 (the "<u>1953 Anderson Deed</u>"). The 1953 Anderson Deed states that the conveyance was made pursuant to the parties' December 1, 1952 partnership agreement. True and accurate copies of the 1952 Peerless Deed and 1953 Anderson Deed are attached as <u>**Exhibits F-1**</u> and <u>**F-2**</u>, respectively.

25. On November 26, 1962, John L. Hutcheson, Jr. and S. Lewis Hutcheson conveyed their interest in a 5.16-acre tract to Rossville Memorial Center by and through that certain deed recorded in Deed Book 252, Pages 516–18, in the Office of the Clerk of the Superior Court of Walker County, Georgia (the "<u>1962 Hutcheson Deed</u>"). The 1962 Hutcheson Deed required Rossville Memorial Center to enter into a lease with JRHA and described the Chief John Ross House as a house "located on the aforesaid premises." A true and accurate copy of 1962

Hutcheson Deed is attached hereto as **Exhibit G**. The 1962 Hutcheson Deed itself states that the Hutchesons owned eighty percent of the described property at the time of conveyance.

26. Effective January 1, 1963, Rossville Memorial Center, as lessor, and JRHA, as lessee, executed a fifty-year ground lease (the "Ground Lease") conveying the 5.16-acre tract on which the House now rests at the intersection of 200 East Lake Avenue and 212 Andrews Street in Rossville, Georgia. The Ground Lease required no rental payments, identified JRHA's obligation to keep the House open to the public as part of the consideration, and provided JRHA an option to lease the premises an additional forty-nine years under the same terms and conditions. A true and accurate copy of the Ground Lease is attached hereto as **Exhibit H**.

27. Paragraph 3 of the Ground Lease required JRHA to maintain the House in good repair and keep it open to the public. Paragraph 3 provided that, if JRHA ceased to do so, "all of the aforesaid premises shall revert to the Lessor." It further provided that, after written notice and a reasonable time to cure a violation of the lease term, condition, or covenant, the lessor could elect forfeiture and recover possession of the premises. (*See* Ex. H, at ¶ 3).

28. Paragraph 4 of the Ground Lease warranted the lessor's fee-simple title to the "premises" and covenanted that JRHA, upon performance of its

obligations, would have quiet and peaceful possession of the leased ground during the lease term. (*See* Ex. H, at ¶ 4).

29. The Ground Lease separately addressed the House and other JRHA property. Paragraph 8 provided that, "[i]f for any reason this lease is terminated," JRHA "shall be permitted to remove the said CHIEF JOHN ROSS HOUSE, and all other property belonging to the Lessee," provided removal could be accomplished without damage to the premises. (*See* Ex. H, at ¶ 8). In or about 1963, JRHA moved the House from the Morgan property to the leased tract in Rossville, Walker County, Georgia, where the House remains today.

**PUBLIC RECORDS CORROBORATING JRHA'S CONTINUING ROLE AND THE SEPARATE LAND TRANSACTION**

30. The NPS identifies the House as a National Historic Landmark designated in 1973. NPS's current site record identifies the House as managed by "John Ross House and Association" and states that the House is "now owned by a local nonprofit organization." U.S. National Park Service, John Ross House and Association History Museum, last updated Aug. 2, 2023.

31. On December 29, 2003, Rossville Memorial Center conveyed certain real estate to the City of Rossville by and through that certain Quitclaim Deed recorded in Deed Book 1222, Pages 275–76, in the Office of the Clerk of the Superior Court of Walker County, Georgia (the "<u>2003 City Deed</u>"). The 2003 City Deed identifies Rossville Memorial Center as Grantor, the City as Grantee, and the

transaction as a charitable contribution of the described "Real Estate." A true and correct copy of the 2003 City Deed is attached hereto as **Exhibit I**.

32. Exhibit A to the 2003 City Deed describes a 5.16-acre tract and states that it is the same property described in Deed Book 252, Page 516. The 2003 City Deed also requires the City to maintain structures on the conveyed property in accordance with the Secretary of the Interior's Standards for Rehabilitation and not to move houses from the conveyed property. JRHA is not identified as a grantor in the 2003 City Deed, and the instrument does not recite a conveyance by JRHA of its claimed ownership interest in the House. (*See* Ex. I).

33. On December 29, 2003, SunTrust Bank and First Tennessee National Bank, acting in their identified trustee capacities, together with James Olan Hutcheson, Henry Lee Hutcheson, Carol Walline Gardell, and Kathrine Walline Brumfield, collectively doing business as Green Fields Properties Company, conveyed certain additional real estate to the City by and through that certain Quitclaim Deed recorded in Deed Book 1222, Pages 271–73, in the Office of the Clerk of the Superior Court of Walker County, Georgia (the "2003 SunTrust Deed"). Exhibit A to the 2003 Green Fields Deed expressly excludes "that property described in Deed Book 252, Pages 516 and in Deed Book 561, Page 744." A true and accurate copy of the 2003 SunTrust Deed is attached hereto as **Exhibit J**.

34. On November 10, 2010, the City later quitclaimed described Lake Avenue real estate identified in the instrument as Parcel No. 2003 055, Lots 9 and 10, to the Downtown Development Authority of the City of Rossville ("RDDA"), by and through that certain Quitclaim Deed recorded in Deed Book 1662, Pages 309–311 (the "2010 RDDA Deed"). The 2010 RDDA Deed references Deed Book 1222, Page 271 as prior title. Neither the 2003 SunTrust Deed nor the 2010 RDDA Deed identifies JRHA as a grantor or recites a transfer by JRHA of its claimed ownership in the House. A true and accurate copy of the 2010 RDDA Deed is attached hereto as **Exhibit K**.

35. Rossville Memorial Center's Form 990-PF for the fiscal year ending June 30, 2004, reports a $300,000 contribution to the City of Rossville and describes the contribution as the "appraised value of donated land." The filing states that the City planned to use the donated property "as park land." A true and accurate copy of the Rossville Memorial Center, Form 990-PF, Statement 8 (fiscal year ending June 30, 2004) is attached hereto as **Exhibit L**.

36. Contemporaneous notes from a July 16, 2004 meeting between the Rossville City Council and the JRHA Board record that, after discussion of ownership of the House, Mayor Johnny Baker and the Council unanimously declared that the City "did and had not ever owned the house." The same notes state that the proposed arrangement contemplated that JRHA "would own, run, and

maintain the house" while working with the City on funding and upkeep of a park centered around the House. A true and accurate copy of the July 16, 2004 meeting notes is attached hereto as **<u>Exhibit M</u>**.

37. In 2005, the Georgia Historic Preservation Division awarded a $9,500 Georgia Heritage Grant for a new roof on the John Ross House. JRHA's records further reflect that JRHA also contributed funds toward the roof work. Following the roof project, the City Treasurer corresponded with JRHA concerning additional roof-repair costs and reimbursement through Georgia's Historic Preservation Grant program. Records concerning the roof work and that correspondence are attached hereto as **<u>Exhibit N</u>**.

38. The Ground Lease's initial fifty-year term expired in January 2013, and JRHA did not exercise the contractual option for an additional forty-nine-year term. Public records after expiration continued to document JRHA's continuous, open, and exclusive possession of the House. JRHA continued to maintain its locks on the House doors and gates, maintained the House and contents, operated House tours, and provided educational information to the public. In August 2017, NPS announced a public program at the House "in partnership with the Chief John Ross House Association" and stated that the House would be open for visitation after the program. A true and accurate copy of the U.S. National Park Service, "Our Hearts are Sickened" John Ross Fights for His People, news release dated

Aug. 1, 2017, is attached hereto as **Exhibit O**. The City's 2017–2027 Community Work Program also identified JRHA as a funding source for the City's ownership-resolution project. (*See* Ex. B-1, at 118).

39. Nothing in the Ground Lease states that expiration of the fixed term transfers title to the House to the lessor. Paragraph 8 instead expressly addresses the House upon termination "for any reason" and permits JRHA to remove the House and other property belonging to JRHA, subject to the condition stated in that paragraph. (*See* Ex. H, at ¶ 8).

40. JRHA has not conveyed its claimed title to the House to the City or to any other person or entity. The City has not identified to JRHA any deed or other instrument by which JRHA transferred its claimed House ownership to the City, nor has the City identified a writ of possession, judgment, condemnation order, or other judicial instrument transferring ownership of the House or authorizing the City's continuing exclusive control. The City did not notify JRHA of lease termination, did not demand possession, and did not otherwise object to JRHA's continued presence prior to March 2026.

41. JRHA has openly, continuously, and exclusively possessed and maintained the House and its contents pursuant to the Ground Lease terms from before 2013 until the City took possession in March 2026. Records of the Walker County Tax Assessor identify JRHA as the current owner of the Chief John Ross

House. A true and accurate copy of the relevant assessor record is attached as **Exhibit P**.

**THE CITY'S OFFICIAL PLANNING RECORDS**

42. In the City of Rossville's 2012–2016 Short Term Work Program, the City identified "Resolve ownership of the John Ross House" as a Natural and Cultural Resources activity and identified the City and JRHA as responsible parties. (*See* Ex. B, at 141).

43. In the City's 2017 Report of Accomplishments concerning the 2012–2016 work program, the City continued to list "Resolve ownership of the John Ross House" as underway and identified 2020 as the projected completion date. (*See* Ex. B-1, at 85).

44. The City's 2017–2027 Community Work Program separately designated the ownership project as "NR-1," scheduled the activity for 2020, estimated a $5,000 cost, identified the City and JRHA as funding sources, and identified the City as the responsible party. (*See* Ex. B-1, at 118). The Rossville City Council formally adopted the 2017 Comprehensive Plan through Resolution No. 650 on February 13, 2017. (*See* Ex. B-1, at 134).

45. In the 2022–2032 Walker County Joint Comprehensive Plan, the City's Report of Accomplishments for 2017–2021 marked the activity "Resolve ownership of the John Ross House" as "Complete." (*See* Ex. B-2, at 94). Later in

2022, the City submitted a grant application for the John Ross Commons Playground. In that application, the City described the John Ross House as a major feature of the Commons, stated that fencing had been installed around the perimeter of the House to prevent unauthorized entrance, and stated that the City and RDDA used the Commons for multiple public events. The application separately stated that the playground project site was then owned by the RDDA and would be deeded to the City if the project were funded; the accompanying November 1, 2022 RDDA letter identifies that playground parcel as Parcel 2003 106 on Andrews Street. The application does not indicate that the House is owned by the City. A true and accurate copy of the City's John Ross Commons Playground grant application and the accompanying RDDA letter is attached hereto as **Exhibit Q**.

46. Public records continued to document JRHA's involvement in preservation matters after the ownership project was marked complete. On February 20, 2023, the Walker County Historic Preservation Commission unanimously tabled further discussion of assisting with funding for roof repairs to the House "at the request of the Chief John Ross House Association." A true and accurate copy of the February 20, 2023 Walker County Historic Preservation Commission meeting minutes is attached hereto as **Exhibit R**.

47. As of August 2, 2023, NPS listed "John Ross House and Association" under "Managed By" and stated that the House is "now owned by a local nonprofit organization." U.S. Nat'l Park Serv., *John Ross House and Association History Museum*, https://www.nps.gov/places/john-ross-house-and-association-history-museum.htm (last updated Aug. 2, 2023). By contrast, on August 3, 2025, the City of Rossville stated that the House had been designated as a monument and memorial through City Resolution No. 740 and the City referred to the House as "a city-owned monument." JRHA alleges that Resolution No. 740 is evidence of the City's publicly asserted ownership position before the March 2026 exclusion, not as evidence that title or ownership had in fact transferred to the City. A true and accurate copy of Resolution No. 740 is attached hereto as **Exhibit S**.

**THE CITY'S HOUSE SEIZURE**

48. In March 2026, City of Rossville Detective David Scroggins told a JRHA member that the City Attorney had instructed him that the City owned the Chief John Ross House and its contents.

49. Detective Scroggins further stated that he had audio/video footage of JRHA board members entering the House, captured from a newly installed video camera positioned directly in front of the House with signage stating: "WARNING Premises Protected by 24 Hour Audio and Video Surveillance By Entering You Agree to be Audio and Video Recorded." JRHA did not consent to the camera or

to be recorded. Detective Scroggins indicated that JRHA's entry without City authorization constituted criminal trespass and stated that removal of property from the House may constitute criminal theft.

50. Also in March 2026, the City erected "NO TRESPASSING PRIVATE PROPERTY VIOLATORS WILL BE PROSECUTED" signs on the gates around the House, placed a sign on the surrounding fence stating: "PLEASE DO NOT CLIMB OR ENTER FENCE VIOLATORS WILL BE PROSECUTED[,]" and installed City-controlled chains and padlocks on gates controlling access to the premises and on the doors to the House. (*See* Ex. A).

51. Detective Scroggins further stated that JRHA could access the House only by first obtaining City permission and coordinating access through the Rossville City Clerk, Russanna Jenkins. (*See* Ex. A).

52. The City did not provide JRHA with prior notice or an opportunity to be heard before removing JRHA locks from the House and perimeter gates, adding City-controlled access locks, erecting a video and audio recording device, posting "No Trespassing" signage, assuming exclusive control over access, and threatening criminal prosecution for unauthorized entry.

53. The City has not initiated a condemnation proceeding concerning JRHA's ownership interest in the House and has not paid JRHA compensation for the City's assumption of exclusive control over the House.

54. The City has not identified to JRHA any judicial writ, warrant, judgment, condemnation order, administrative adjudication, nuisance determination, emergency order, or other legal process authorizing the City to take exclusive control of the House or to exclude JRHA from it.

55. Since March 2026, the City has prevented, encumbered, or restricted JRHA from freely entering the House and accessing JRHA-owned property inside it. The City has thereby prevented JRHA from possessing, inspecting, maintaining, preserving, and using the House in furtherance of JRHA's mission. As a result, vegetation became overgrown around the House in the summer and was then over pruned to the ground by City jail inmates. The House has been neglected and the public has been denied access to this important Cherokee artifact.

56. The City's exclusion remains ongoing. The inability to inspect and maintain the House also creates a continuing risk that deterioration or damage to the historic structure or JRHA-owned contents will go undetected or unaddressed.

**THE CHALLENGED CONDUCT WAS A MUNICIPAL DECISION**

57. The challenged conduct is not an isolated, unauthorized act attributable only to Detective Scroggins. The Rossville City Council formally adopted the 2017 Comprehensive Plan that treated ownership of the House as an identified City work-program matter. In 2026, Detective Scroggins stated that the

City Attorney had instructed him that the City owned the House and its contents, while the City-controlled locks, signage, access restrictions, and coordination through the City Clerk, reflected action across multiple municipal functions. (*See* Ex. A; Ex. B-1, at 85, 118, 134; Ex. B-2 at 94; Ex. S). The record also reflects a documented change in the City's stated position. The July 2004 meeting notes record the City Council's disclaimer of House ownership and recognition that JRHA would own, run, and maintain the House, while the City's August 2025 public statement characterizes the House as City-owned. (*See* Ex. M).

58. The City's coordinated actions include installing City-controlled access locks, posting "No Trespassing" signs, erecting a video and audio camera at the House entrance, placing access under City control, and using law enforcement to communicate threatened criminal prosecution for entry without City authorization. (*See* Ex. A).

59. Those coordinated actions reflect an intentional and deliberate City position and course of conduct concerning ownership and control of the House, rather than a random or unauthorized act by a single employee.

60. Upon information and belief, the City's decision to assert ownership of the House, exclude JRHA, control access, and enforce that exclusion through threatened criminal prosecution was the product of City policy and was made, directed, approved, or ratified by one or more City officials with final

policymaking authority concerning the City's claimed property rights, control of municipal property, and/or enforcement of the City's asserted right to exclude JRHA. (*See* Ex. A; Ex. B-1, at 85, 118, 134; Ex. B-2, at 94; Ex. S).

61. The City's Charter vests "legislative authority of the government of the City of Rossville" in the City Council. Rossville, Ga., Code of Ordinances art. 2, § 2.10. The Rossville City Council is therefore a final policymaker for the City with respect to the municipal decisions alleged in this Complaint, including the adoption of the work program activities identifying resolution of the House's ownership and the adoption of Resolution No. 740.

62. Since March 2026, the City has continued to enforce its ownership position and exclude JRHA from the House after the dispute was brought to the City's attention. The City's official decision, policy, practice, or ratification is the moving force behind the continuing deprivation alleged in this Complaint.

## COUNT I

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (FIFTH AMENDMENT TAKINGS CLAUSE, AS APPLIED THROUGH THE FOURTEENTH AMENDMENT)

63. Plaintiff incorporates by reference Paragraphs 1 through 62 as if fully set forth herein.

64. The City acted under color of state law in asserting ownership of the House, taking exclusive control over access, excluding JRHA, and enforcing that

exclusion through threats of criminal prosecution. As alleged above, this conduct reflected an official decision, policy, practice, or ratification by City officials with final policymaking authority, including the City Council's exercise of the legislative authority vested in it by the City Charter.

65. JRHA alleges that it owns the House and holds the associated rights to possess, use, maintain, and control the House. The alleged ownership and possessory interests constitute property interests protected by the Fifth Amendment Takings Clause, as applied through the Fourteenth Amendment.

66. By affixing City-controlled chains and padlocks on access gates, posting "No Trespassing" signs, activating a 24/7 video and audio camera, taking exclusive control over access, and excluding JRHA under threat of criminal prosecution, the City appropriated for itself JRHA's rights to possess, use, and control the House and its contents.

67. The City's physical exclusion and assumption of exclusive control constitute a physical taking of JRHA's protected property interests.

68. The taking was caused by the City's official decision, policy, practice, or ratification described above.

69. The City has not paid JRHA just compensation for the taking of this priceless Cherokee artifact and has not initiated or notified JRHA of a condemnation proceeding regarding the House.

70. As a direct and proximate result of the City's conduct, JRHA has suffered and continues to suffer loss of possession, use, access, control, and enjoyment of the House in furtherance of its mission and other damages to be proven. JRHA's continuing exclusion also prevents it from inspecting the House, addressing preservation needs, and conducting the public programming central to its mission.

71. On this Count, JRHA is entitled to just compensation; however, the House is a priceless, irreplaceable Cherokee artifact that has no ascertainable market value, so JRHA seeks injunctive relief and other relief authorized by law, including, costs, and reasonable attorneys' fees under 42 U.S.C. § 1988. JRHA separately seeks declaratory and injunctive relief under its Fourth Amendment, procedural due process, and declaratory judgment claims.

## COUNT II

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (FOURTH AMENDMENT UNREASONABLE SEIZURE)

72. Plaintiff incorporates by reference Paragraphs 1 through 71 as if fully set forth herein.

73. The Fourth Amendment protects the JRHA against unreasonable governmental seizures of property and applies to the City through the Fourteenth Amendment.

74. At the time of the City's conduct, JRHA claimed ownership of the House and exercised possessory control over access to the House, including through locks and its ongoing stewardship activities, and JRHA enjoyed a right against unreasonable seizure of the House and its contents.

75. The City meaningfully interfered with JRHA's possessory interests by installing City-controlled padlocks over access gates, taking exclusive control over access, posting "No Trespassing" signs, erecting a camera, and warning of criminal prosecution if JRHA's representatives entered without City authorization.

76. The seizure was unreasonable. The City did not obtain a judicial order authorizing the seizure and did not identify to JRHA an emergency condition or adjudicated nuisance requiring immediate exclusion, despite the longstanding and known dispute concerning ownership and control of the House.

77. The seizure was caused by the City's official decision, policy, practice, or ratification described above.

78. As a direct and proximate result of the unreasonable seizure, JRHA has suffered and continues to suffer loss of possession, access, use, and control of the House in furtherance of its mission and other damages to be proven.

79. JRHA is entitled to declaratory and injunctive relief, compensatory damages to the extent authorized by law, costs, and reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT III

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS)

80. Plaintiff incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

81. JRHA's ownership and possessory interests in the House, including its claimed rights to access, use, maintain, preserve, and control the House, are property and liberty interests protected by the Due Process Clause of the Fourteenth Amendment.

82. The City deprived JRHA of those asserted interests by taking exclusive control of access to the House, installing City-controlled locks, posting "No Trespassing" signs, and threatening JRHA's members with criminal prosecution for entering the House without City permission.

83. The deprivation resulted from an intentional, deliberate, and coordinated City decision, policy, practice, or ratification rather than a random and unauthorized act by a single employee.

84. Pre-deprivation process was feasible. The City's own formally adopted planning records show that ownership of the House had been an identified municipal issue for years, going back to 2004 and including a City work-program activity scheduled for resolution in 2020. The City therefore had ample opportunity to provide notice of its ownership position and seek a judicial or other

lawful determination of the parties' competing rights before physically excluding JRHA and invoking criminal enforcement. (*See* Ex. B, at 141; Ex. B-1, at 85, 118, 134). The 2004 meeting notes and the City's 2025 public ownership statement further show that the parties' respective positions concerning the House were the subject of municipal attention long before the City imposed the March 2026 lockout. (*See* Ex. M).

85. The City provided JRHA no notice or meaningful opportunity to be heard before the deprivation. Before imposing and continuing the lockout, the City did not seek or obtain a dispossessory judgment, writ of possession, condemnation order, or other judicial determination resolving its asserted right to exclude JRHA from the House.

86. As a direct and proximate result of the City's deprivation of procedural due process, JRHA has suffered and continues to suffer loss of possession, access, use, and control of the House in furtherance of its mission and other damages to be proven.

87. JRHA is entitled to declaratory and injunctive relief, compensatory damages to the extent authorized by law, costs, and reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT IV

## DECLARATORY JUDGMENT
## (JRHA OWNS THE CHIEF JOHN ROSS HOUSE)

88. Plaintiff incorporates by reference Paragraphs 1 through 87 as if fully set forth herein.

89. An actual controversy exists between JRHA and the City concerning ownership of the House and the parties' respective rights arising from the 1962 Chief John Ross House Conveyance, the 1962 Hutcheson Deed, the Ground Lease, and the 2003 City Deed. The separate land-chain instruments now before the Court also include the 1952 Peerless Deed, the 1953 Anderson Deed, the 2003 Green Fields Deed, and the 2010 RDDA Deed.

90. The Court has authority under 28 U.S.C. §§ 2201 and 2202 to declare the parties' rights, and it has supplemntal jurisdiction under 28 U.S.C. § 1367(a) over the related questions governed by Georgia property and contract law.

91. The 1962 Chief John Ross House Conveyance transferred the House structure to JRHA separately from the land on which the House then stood (and on which the House no longer remains).

92. JRHA thereafter relocated its House to land leased from Rossville Memorial Center under the Ground Lease.

93. The Ground Lease repeatedly distinguishes the leased "premises" from the House located on those premises. Paragraph 3 provides that, under the

circumstances stated there, "all of the aforesaid premises shall revert to the Lessor." Paragraph 8 separately provides that, if the Ground Lease is terminated "for any reason," JRHA may remove the House and "all other property belonging to the Lessee," subject to the stated condition concerning damage to the premises. (*See* Ex. H, at ¶¶ 1, 3, 8).

94. The 2003 City Deed conveyed described real estate from Rossville Memorial Center to the City and traced the 5.16-acre tract to the property described in Deed Book 252, Page 516. The 2003 City Deed is not a conveyance by JRHA and does not recite that JRHA transferred its claimed ownership interest in the House to the City. (*See* Ex. J). The 2003 Green Fields Deed, executed two days later, expressly excepted the property described in Deed Book 252, Page 516, and the 2010 RDDA Deed later conveyed the described Lake Avenue real estate from the City to the RDDA. (*See* Ex. J; Ex. K).

95. The City nevertheless now claims ownership of the House and has exercised exclusive physical control over access to it to the exclusion of JRHA's ownership rights.

96. JRHA therefore seeks a declaration, as between JRHA and the City, that JRHA owns the Chief John Ross House structure; that whatever interest the City holds in the underlying real estate does not, by itself, vest title to the House in the City; and that the expiration of the Ground Lease's fixed term, with JRHA's

continued performance thereunder, resulted in a continuation of the Ground Lease on a month-to-month basis.

97. JRHA seeks relief only as between JRHA and the City and does not ask this Court to quiet title to the underlying land or adjudicate the property interests of nonparties in that land. JRHA further seeks a declaration concerning its right to access and control the House and JRHA-owned contents consistent with JRHA's ownership and applicable law. The 2010 RDDA Deed is alleged as part of the separate chain of title to the surrounding real estate; JRHA does not seek in this action to adjudicate the RDDA's title or other nonparty interest in that real estate.

98. An actual controversy also exists concerning the City's decision, reflected in Resolution No. 740, to designate the House as a monument and memorial and treat it as publicly owned under O.C.G.A. § 50-3-1. JRHA alleges that the City did not own the House when it adopted that resolution and has not since publicly acquired JRHA's title. (*See* Ex. E; Ex. H, at ¶ 8; Ex. N; Ex. S).

99. The restrictions in O.C.G.A. § 50-3-1(b)(2) and (3) require that a publicly owned monument on publicly owned property may not be removed, impermissibly attempting to restrict JRHA's ownership interest in the House and prevent JRHA from working with the Cherokee Nation to relocate and properly preserve the House for future generations on Cherokee lands in Oklahoma. The City's ownership of an interest in the underlying land does not establish a public

ownership of JRHA's separately owned House, and the statute does not transfer title or an ownership interest to the City by unnoticed, unilateral municipal designation.

100. JRHA seeks a declaration that Resolution No. 740 and the municipal decision it embodies are invalid and unenforceable insofar as they attempt to designate the House as a publicly owned monument, subject it to O.C.G.A. § 50-3-1(b)(2) and (3), or authorize the City to override JRHA's ownership and possessory rights. That declaration will resolve JRHA's uncertainty concerning its future access and preservation activities, and rights under Paragraph 8 of the Ground Lease. (*See* Ex. H, at ¶ 8).

**COUNT V**

**EQUITABLE RELIEF**

101. Plaintiff incorporates by reference Paragraphs 1 through 100 as if fully set forth herein.

102. JRHA has no adequate remedy at law for the City's continuing physical exclusion from the House. The House is a unique, irreplaceable, historic and culturally significant structure, and monetary damages alone cannot restore JRHA's ability to inspect, maintain, preserve, and steward it for public access and education.

103. The City's continuing exclusion causes irreparable injury by depriving JRHA of control over the unique, priceless and culturally significant property and by preventing JRHA from inspecting and addressing preservation or maintenance needs as they arise. Further, JRHA is precluded from guiding tours and presenting educational and culturally important programs for the benefit of the public, as it has for three quarters of a century. The House's continuing preservation and stewardship needs are reflected in public records, including the Walker County Historic Preservation Commission's 2023 consideration of assistance with roof-repair funding. (*See* Ex. M).

104. The balance of equities favors relief that prevents continued constitutional injury while preserving the House and its contents and JRHA's property rights thereto pending final adjudication.

105. The public interest favors compliance with constitutional requirements and the responsible preservation of this National Historic Landmark, which the City has unlawfully taken and concealed from use.

106. JRHA therefore seeks temporary, preliminary, and permanent injunctive relief, as appropriate under Federal Rule of Civil Procedure 65. Pending final adjudication, JRHA seeks relief preserving the House and disputed contents and permitting such inspection and access as the Court deems appropriate. Upon

final adjudication, JRHA seeks restoration of its lawful access to and control of the House and JRHA-owned contents consistent with the Court's declaration of rights.

## COUNT VI

### VIOLATION OF PROCEDURAL DUE PROCESS (CONSTITUTION OF THE STATE OF GEORGIA OF 1983)

107. Plaintiff incorporates by reference Paragraphs 1 through 106 as if fully set forth herein.

108. JRHA's ownership and possessory interest in the House and JRHA-owned contents, and its liberty interest, are protected against deprivation without due process.

109. The City deprived JRHA of those interests through its intentional and deliberate lockout and continuing exclusion without advance notice to JRHA or a meaningful opportunity to be heard. The City feasibly could have pursued lawful process before acting, and there was no emergency that justified immediate exclusion.

110. JRHA seeks a declaration that the City's continuing deprivation violates Article I, Section I, Paragraph I of the Constitution of the State of Georgia of 1983 and an injunction enforcing it and restoring lawful access and control to JRHA. No damages are sought under this Count.

## COUNT VII

## INVERSE CONDEMNATION (CONSTITUTION OF THE STATE OF GEORGIA OF 1983)

111. Plaintiff incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

112. The City appropriated JRHA's rights to possess, use, and control the House and its contents for the City's asserted public purposes of maintaining a municipal monument. Its continuing exclusion has taken or damaged JRHA's private property without first initiating condemnation proceedings or paying just and adequate compensation.

113. JRHA seeks an injunction stopping the continued taking of this non-fungible, priceless, and culturally significant historic building. The Just Compensation Provision of Article I, Section III, Paragraph 1(a) of the Constitution of the State of Georgia of 1983 waives sovereign immunity for this relief.

114. Alternatively, and without conceding that the City has lawfully acquired the House, JRHA seeks just and adequate compensation for the property interest taken or damaged, including loss of use during any temporary taking, without duplicative recovery.

**COUNT VIII**

**UNREASONABLE SEIZURE**
**(CONSTITUTION OF THE STATE OF GEORGIA OF 1983)**

115. Plaintiff incorporates by reference Paragraphs 1 through 114 as if fully set forth herein.

116. The Constitution of the State of Georgia of 1983 protects JRHA's House and effects against unreasonable seizure by the City.

117. The City unreasonably seized the House and JRHA-owned contents by assuming exclusive control, maintaining City-controlled locks, and excluding JRHA under threat of criminal prosecution. The City had no warrant, judgment, consent from JRHA, or justifiable emergency authorizing that seizure.

118. JRHA seeks a declaration that the City's continuing seizure violates Article I, Section I, Paragraph XIII of the Constitution of the State of Georgia of 1983 and an injunction enforcing it and restoring lawful possession and control. No damages are sought under this Count.

**COUNT IX**

**TRESPASS**
**(GEORGIA COMMON LAW)**

119. Plaintiff incorporates by reference Paragraphs 1 through 118 as if fully set forth herein.

120. JRHA owns and is entitled to possess the House separately from the underlying land. To the extent the House is classified as realty, the City's intentional physical interference with and exclusion of JRHA from the House, without consent or lawful authority, constitutes a continuing trespass.

121. This trespass is the same taking or damage of private property for the City's asserted public purpose alleged in Count VII. JRHA invokes the Just Compensation Clause's waiver to that extent and seeks damages for the resulting loss of possession and use, and relief stopping the continuing trespass until lawful condemnation prerequisites are met, without duplicative recovery.

## **COUNT X**

### **CONVERSION**
### **(GEORGIA COMMON LAW)**

122. Plaintiff incorporates by reference Paragraphs 1 through 121 as if fully set forth herein.

123. JRHA owns and is entitled to immediate possession of its personal property inside the House. Alternatively, treating the House as realty, JRHA also asserts conversion of the separately owned, removable House structure to the extent it constitutes personalty. (*See* Ex; E; Ex. H, at ¶ 8).

124. The City intentionally exercised ownership and exclusive dominion over the House and its contents, without JRHA's consent and contrary to JRHA's right to possess it, by taking control and preventing JRHA from recovering it.

125. JRHA seeks return of its property and damages for wrongful detention, or its value as an alternative remedy without duplicative recovery. To the extent the same appropriation constitutes a taking or damaging for public purposes, JRHA also invokes the waiver alleged in Count VII.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Declare, as between JRHA and the City, that JRHA is the owner of the Chief John Ross House structure and that the City's interest in the underlying land and as a landlord does not, by itself, vest title to the House in the City;

(b) Declare the parties' respective rights under the Ground Lease, including that expiration or termination of the Ground Lease's fixed term did not itself transfer title to the House to the City and that the parties' rights following expiration or termination are governed by the Ground Lease and applicable Georgia law;

(c) Enter judgment in favor of JRHA on its Fifth Amendment claim and award injunctive relief in lieu of just compensation;

(d) Enter judgment in favor of JRHA on its Fourth Amendment and procedural Due Process Clause claims and award compensatory damages to the extent authorized by law;

(e) Enter temporary, preliminary, and permanent injunctive relief appropriate to the stage of the case, including relief preserving the House and disputed contents from sale, transfer, encumbrance, relocation, dismantling, damage, destruction, or material alteration; permitting appropriate inspection and access pending adjudication; and, upon final adjudication, restoring JRHA's lawful access to and control of the House and JRHA-owned contents consistent with the Court's declaration of the parties' rights;

(f) Declare Resolution No. 740, and the municipal decision designating the House a monument, invalid and unenforceable insofar as they treat the House as publicly owned, subject it to O.C.G.A. § 50-3-1(b)(2) and (3), or override JRHA's ownership and possessory rights;

(g) Enter judgment in favor of JRHA on its Georgia constitutional procedural due process and unreasonable seizure claims, declare the City's continuing deprivation and seizure unlawful, and award injunctive relief enforcing that declaration;

(h) Enter judgment in favor of JRHA on its inverse condemnation, trespass, and conversion claims; enjoin the continuing taking; restore JRHA's property; and award alternative compensation or damages to the extent authorized by law, without duplicative recovery;

(i) Award JRHA its reasonable attorneys' fees and litigation expenses under 42 U.S.C. § 1988;

(j) Tax costs against Defendant; and

(k) Grant such other legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

JRHA demands a trial by jury on all issues so triable as of right.

Dated: October 7, 2026

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: _/s/ Melissa M. Kirby_
Melissa M. Kirby | GA Bar No. 508999
Alan C. Cates (*PHV forthcoming*)
Daniel J. Esquivel (*PHV forthcoming*)
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
(423) 266-5500-Telephone
(423) 266-5499-Facsimile
Melissa.Kirby@huschblackwell.com
Alan.Cates@huschblackwell.com
Daniel.Esquivel@huschblackwell.com

and

Ryan Burke | GA Bar No. 336130
Husch Blackwell LLP
3550 Lenox Rd NE, Suite 2100
Atlanta, GA 30326
(404) 850-5317-Telephone
Ryan.Burket@huschblackwell.com

***Attorneys for John Ross House Association***

# CERTIFICATION OF COMPLIANCE

Pursuant to L.R. 7.1(D), N.D. Ga., counsel for Plaintiff hereby certifies that the foregoing document has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in L.R. 5.1(C).

**HUSCH BLACKWELL LLP**

*/s/ Melissa M. Kirby*
Melissa M. Kirby | GA Bar No. 508999
Alan C. Cates (*PHV forthcoming*)
Daniel J. Esquivel (*PHV forthcoming*)
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
(423) 266-5500-Telephone
(423) 266-5499-Facsimile
Melissa.Kirby@huschblackwell.com
Alan.Cates@huschblackwell.com
Daniel.Esquivel@huschblackwell.com

and

Ryan Burke | GA Bar No. 336130
Husch Blackwell LLP
3550 Lenox Rd NE, Suite 2100
Atlanta, GA 30326
(404) 850-5317-Telephone
Ryan.Burket@huschblackwell.com

***Attorneys for John Ross House Association***