**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **JOHN ROSS HOUSE ASSOCIATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.__________________** |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **CITY OF ROSSVILLE, GEORGIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW John Ross House Association, Inc. ("Plaintiff" or "JRHA"), by and through undersigned counsel, and pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, submits this Memorandum of Law in Support of its Motion for Preliminary Injunction (the "Motion").

## I. INTRODUCTION

The Chief John Ross House (the "House") is a two-story log house artifact that is the former home of historical figure Chief John Ross, who served as Principal Chief of the Cherokee Nation for thirty-eight (38) years. (Compl. ¶¶ 1–2). Chief John Ross was living in the subject House in Rossville, Georgia when the Cherokee people were forcibly removed in the summer of 1838 to endure the Trail of Tears from Georgia to Oklahoma. (Compl. ¶ 2). Chief John Ross legally and politically

advocated for the rights of the Cherokee tribe throughout his lifetime. *Id.* He opposed the Treaty of New Echota, guided the Cherokee Nation throughout removal, helped craft the 1839 Constitution of the United Cherokee Nation, led the Cherokee Nation during the American Civil War, and advocated for the post-war Treaty of 1866 to secure permanent land rights. *Id.*

JRHA was organized in 1958 to preserve the House and educate the public about Chief John Ross and the Cherokee Nation. (Declaration of Janet Foreman-Green (the "JRHA Decl."), ¶ 2). Title to the House was conveyed to the JRHA to fulfill its mission in 1962. (Compl., ¶¶ 21–22; Ex. E). The House, its furnishings, historical objects, and interpretive materials maintained therein (the "Collection") were procured by the JRHA, are preserved by JRHA, and allow JRHA members to teach that history through the place and the objects connected with it. (JRHA Decl., ¶¶ 8, 18, 25).

The City of Rossville, Georgia (the "City") has now taken the House and displaced JRHA's independent possession of the House and its historic contents. For over half a century, JRHA secured the House with its own locks and keys, stewarded the House and Collection, fulfilled its preservation and education mission, and controlled access to the House as a property owner. (JRHA Decl., ¶¶ 11, 18). As of March 2026, the City has overtaken control of House access, City officials now openly claim ownership of the House and its contents, and the City has suggested

criminal consequences for JRHA members or members of the public entering the House premises without City authorization and assistance. (JRHA Decl., ¶¶ 11, 14–16). The City's restrictions prevent JRHA from performing its preservation duties, including potential relocation of the House, and continued educational programming at the House. (JRHA Decl., ¶¶ 10, 18, 19, 25).

JRHA seeks relief from the City's physical taking and exclusion. The requested injunction would preserve the House and Collection in place and restore the status quo and JRHA's independent access, possession, and operational control of the House and Collection pending judgment. JRHA would continue to bear its operating costs for House and Collection maintenance, repairs, and educational programming, as it always has done. The City may provide non-intrusive, reasonable public safety and emergency services if necessary while the Court determines JRHA's pending claims against the City.

## II. FACTUAL BACKGROUND

JRHA was established in 1958 to receive, restore, and preserve the House and educate the public concerning Chief John Ross and the Cherokee Nation. (JRHA Decl., ¶ 2). The House, a National Historic Landmark, stands on land located at the intersection of 200 East Lake Avenue and 212 Andrews Street in Rossville. (JRHA Decl., ¶ 2). JRHA claims ownership of the structure, separately from the land,

through the June 1962 conveyance of the House to JRHA from Neal Morgan. (Compl., ¶¶ 21–22; Ex. E).

In November 1962, John L. Hutcheson, Jr. and S. Lewis Hutcheson conveyed their interest in a 5.16-acre tract (the "John Ross House Tract") to Rossville Memorial Center subject to a ground lease to JRHA for the House. (Compl., Ex. G). Rossville Memorial Center and JRHA entered into the fifty-year ground lease effective January 1, 1963 (the "Ground Lease"), which identifies the "premises" as "land" and addresses maintenance, public access, forfeiture, and reentry. (Compl., Ex. H, ¶¶ 3, 4). Paragraph 8 permits JRHA to remove the House and its other property upon lease termination if done without damage to the premises. (Compl., Ex. H, ¶ 8).

Rossville Memorial Center conveyed the tract to the City in 2003, subject to requirements to maintain the structures and not move the houses from the property. (Compl., Ex. I). Notes from a July 16, 2004 meeting record Mayor Johnny Baker and Councilmembers Nathan Bain, Charles Dunn, and Ted Harris unanimously acknowledging that the City "did and had not ever owned the house." (Compl., Ex. M). The notes contemplate JRHA owning and operating the House with City assistance on funding, grounds maintenance, and surveillance. (Compl., Ex. M).

In 2010, the City conveyed real estate including the John Ross House Tract to the Rossville Downtown Development Authority. (Compl., Ex. K). In January 2013,

the Ground Lease's fifty-year fixed term expired and JRHA did not formally exercise its renewal option. (Compl., Ex. H). Neither the City nor JRHA has notified the other of termination.

The City's 2017 Joint Comprehensive Plan listed "Resolve ownership of the John Ross House" as "[u]nderway" and assigned that continuing task to the City. (Compl., Ex. B-1, at 85, 118). The Mayor and Council adopted the plan through Resolution No. 650 on February 13, 2017. (Compl., Ex. B-1, at 134). The 2022–2032 Joint Comprehensive Plan's report of accomplishments marked the "ownership" activity as "Complete." (Compl., Ex. B-1, at 134).

On April 28, 2022, the City adopted Resolution No. 740, designating the House a monument and memorial. (Compl., Ex. S). An August 3, 2025 social media post under the name "Rossville Georgia" invoked that resolution and O.C.G.A. § 50-3-1, described the House as a "city-owned monument," and asserted restrictions on relocation, removal, or alteration. (Compl., Ex. S).

Janet Foreman-Green attended the House's dedication on May 29, 1963, volunteered with JRHA since 1982, joined JRHA as a member in 2019, and is the JRHA President as of April 1, 2026. (JRHA Decl., ¶¶ 1, 5). She identifies furnishings, tools, china, and Civil War relics in the Collection, including items donated by members of the Ross family, the Hermitage, the Eastern Band of Cherokee Indians, and others. (JRHA Decl., ¶¶ 8–9). To her knowledge, JRHA has

not authorized a conveyance of its property to the City and no new conveyance is on record. (JRHA Decl., ¶ 7).

Before his death on December 7, 2025, former JRHA President Larry Rose, Jr. regularly conducted tours of the House for school groups, tribal groups, and other visitors. (JRHA Decl., ¶ 17). Before the lockout, JRHA was never required to seek City approval to access the House so JRHA's officers, members, and volunteers could handle housekeeping and repairs, maintain the grounds, and secure the property. (JRHA Decl., ¶¶ 11, 18). JRHA has continuously, openly, and exclusively possessed and maintained the House and the property inside it.

Concerned about the unauthorized entry of unhoused persons and vandalism at the House, and in contemplation of a potential future move of the House to the Cherokee Reservation in Oklahoma, the JRHA President began to inventory and secure objects inside the House from on or about March 9 through March 12, 2026. (JRHA Decl., ¶ 10).

Soon after March 12, 2026, the JRHA President observed City-controlled chains and padlocks on the gates and House doors, blocking JRHA's access to the House, along with posted signs prohibiting entry and warning that violators would be prosecuted. (Compl., Ex. A; JRHA Decl., ¶¶ 11–12). Around that same time, Detective David Scroggins called her and told her that the City's attorney had instructed him that the City owned the House and its contents. (JRHA Decl., ¶ 14).

He stated that he had audio and video footage of JRHA board members entering the House, captured on a newly installed camera, and indicated that entry without City authorization constituted criminal trespass and that removing property could constitute theft. (JRHA Decl., ¶ 15). Before the obstructions were erected, JRHA received no notice or opportunity to address the City's proposed exclusion of JRHA from the House. (JRHA Decl., ¶ 13).

The City has since required JRHA to coordinate any entry of the House through the City Clerk, and JRHA has not regained independent access. (JRHA Decl., ¶ 16). These restrictions prevent JRHA from independently opening the House for educational visits and obstruct JRHA's inspection, maintenance, and stewardship mission. (JRHA Decl., ¶¶ 18–19).

## III. LEGAL STANDARD

A preliminary injunction requires the movant to establish: (1) a substantial likelihood of success on the merits; (2) irreparable injury unless the injunction issues; (3) that the threatened injury outweighs the harm the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). The threatened injury must be likely, and the movant bears the burden on each requirement. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). Preliminary relief preserves the parties' relative positions pending a decision on the merits. *Univ. of*

*Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Pursuant to Rule 65, JRHA requests a prompt, noticed hearing on its Motion.

## IV. ARGUMENT

JRHA is entitled to preliminary relief because the City's assertion of ownership and exclusion of JRHA constitute an unreasonable seizure of JRHA's property. The exclusion prevents JRHA's educational work and exposes the House and the irreplaceable objects to a substantial risk of loss or damage, causing irreparable harm. Restoring JRHA's independent access and possession pending judgment would protect JRHA and the public while allowing the City to maintain reasonably necessary security in the surrounding park area.

### A. JRHA Is Likely to Succeed on the Merits of its Claims.

A movant needs to establish likely success on only one claim to support the requested relief. *Biedermann v. Ehrhart*, No. 1:20-cv-01388-JPB, Doc. 48, at 7 (N.D. Ga. Mar. 7, 2023). Based on the above facts, JRHA makes ten (10) claims against the City: **Count I** is a violation of civil rights under 42 U.S.C. § 1983 and the Fifth Amendment Takings Clause (as applied through the Fourteenth Amendment); **Count II** is a violation of civil rights under 42 U.S.C. § 1983 for a Fourth Amendment Unreasonable Seizure of Property (as applied through the Fourteenth Amendment); **Count III** is a violation of civil rights under 42 U.S.C. § 1983 and procedural Due Process through the Fourteenth Amendment; **Count IV**

seeks a declaratory judgment that JRHA owns the House; **Count V** seeks equitable relief; **Count VI** is a violation of procedural Due Process under Article I, Section I, Paragraph I of the Constitution of the State of Georgia of 1983; **Count VII** claims Inverse Condemnation under the Constitution of the State of Georgia of 1983; **Count VIII** is a violation of the Constitution of the State of Georgia of 1983 due to Unreasonable Seizure of property; **Count IX** claims common law Trespass; and **Count X** claims common law Conversion. (Compl., ¶¶ 63–125.) At least one, if not most, of these claims are likely to succeed on the merits.

**i. Counts I, II, III, VI, VII, and VIII: The City Took and Seized the House from JRHA Without Procedural Due Process in violation of the Constitutions of the United States and the State of Georgia.**

**a. <u>Municipal Liability</u>**

Under federal and state law, a municipality is liable under Section 1983 when its official policy or a decision by a final policymaker causes constitutional deprivation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–94 (1978). The Eleventh Circuit held a plaintiff must show the following to impose § 1983 liability on a municipality: (1) that its constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom actually caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); see also *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Similarly, Georgia courts "interpret [Section

1983] to create a cause of action, cognizable by the courts of this state, based upon acts which are in implementation of an intentional policy, adopted or ratified by the governing body of a public agency, which acts work deprivation of a constitutional right." *City of Cave Spring v. Mason*, 252 Ga. 3, 4 (1984).

The Supreme Court refined the culpability requirement for municipal liability cases whereby a governing body's intentional acts violating constitutional rights amount to "per se" Section 1983 liability. *McDowell*, 392 F.3d at 1291 (citations omitted). For a municipality's facially valid actions that violated constitutional rights, rigorous culpability and causation standards ensure it is not held liable solely for its employee's actions. *Id.* State and local law determine who possesses "final policymaking authority," and an employee's discretion to act does not alone establish that authority. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399–1403 (11th Cir. 1997). These requirements also apply to claims for prospective relief against the City. *Los Angeles County v. Humphries*, 562 U.S. 29, 39 (2010).

Since 1962, JRHA has been the sole private owner of the House. Current Walker County Tax Assessor records reflect this ongoing ownership status. In March 2026, the City deprived JRHA of its property interest by taking and unreasonably seizing the House without providing JRHA with notice and an opportunity to be heard, and without providing just compensation, in violation of JRHA's Fourth, Fifth, and Fourteenth Amendment constitutional rights.

The Mayor and City Council passed a Resolution in a special session with no or very limited notice to designate the privately owned House as a publicly owned monument. That intentional City action was intended to impermissibly restrict JRHA's ownership rights by bringing the House under O.C.G.A. § 50-3-1 and preventing its removal to the Cherokee Reservation in Oklahoma.

Further, the City affixed City-controlled locks on the gates and doors to the House, to the exclusion of JRHA's locks, controlling access to the House premises. The City erected an audio and video recording camera in front of the House and also erected "No Trespassing" signs around the perimeter of the House that threaten criminal prosecution to those who do not heed its warning.

City Detective Scroggins tracked down JRHA leadership and informed JRHA that, according to the City Attorney, the City owns the House, JRHA may no longer exercise its ownership rights, unauthorized access may be treated as trespass, and removal of contents as a theft. JRHA was informed it must request and coordinate access through the City Clerk. Therefore, the constitutional violations claimed were not caused by the actions of one City employee, but by the concerted efforts of the Mayor, City Council, City Attorney, City Police, and City Clerk.

These intentional City acts, through official policy, unofficial custom, or widespread practice, by City officials with final policymaking authority, constitute the physical taking and unreasonable seizure of JRHA's private property, the House,

without notice or an opportunity to be heard and without just compensation. At a minimum, the City acted with deliberate indifference to the known or obvious consequences of injury to JRHA and will be held liable for its unconstitutional acts.

**b. <u>Federal and State Takings Clause Violation Claims</u>**

The federal Takings Clause provides that private property shall not "be taken for public use, without just compensation," a guarantee applied to states through the Fourteenth Amendment. U.S. Const. amend. V. "A permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).

The Just Compensation Clause under Georgia law is slightly broader, allowing a property owner to bring an inverse condemnation claim against a municipality when the municipality takes or damages private property for public purposes without initiating formal eminent domain proceedings and without first paying just and adequate compensation. *See* Ga. Const. art I, § III, ¶ I(a); *see also* O.C.G.A. § 22-1-5. In Georgia, the term "property" is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership, and that which is subject to be owned and enjoyed. *Woodside v. City of Atlanta*, 214 Ga. 75, 83 (1958). A "taking" of property for which compensation must be first paid does not require an actual physical taking, but may

consist in an interference with the rights of ownership, use and enjoyment, or any other right incident to property. *Id.*

JRHA holds title to the House, a priceless historical Cherokee artifact, which was conveyed from Neal Morgan to JRHA in June 1962. (Compl., ¶¶ 21–22; Ex. E). The Walker County Tax Assessor's records currently reflect the JRHA's continued ownership of the pine log, 735 square foot House on 0 acres located at 212 Andrews Street in Rossville. (Compl., ¶ 41; Ex. P). Until March 2026, JRHA enjoyed its ownership rights to the House in fulfillment of its mission. At that time, without owner consent, prior notice, or just compensation, the City physically took possession of the House by placing chains and locks on a perimeter fence and the House doors; placed "No Trespassing" signage on the gates that threaten criminal prosecution to those who enter; placed a police-monitored audio and video camera at the front of the House; and police tracked down JRHA leadership and informed JRHA that the City now owns the House and JRHA members are not permitted to access the House or its contents without prior City approval. (Compl., ¶¶ 48–58).

As it did for over sixty years, JRHA no longer possesses a key to access the locked House and remains under the threat of criminal prosecution if it attempts to physically exercise its ownership rights thereto. Therefore, the City, a government entity, has violated JRHA's property rights by physically taking JRHA's property

and property interest and interfering with property ownership, access, use, and enjoyment without just compensation.

**c. <u>Federal Unreasonable Seizure Violation Claim</u>**

The Fourth Amendment applies when the government meaningfully interferes with a possessory interest in property, including in a civil property dispute. *Soldal v. Cook County*, 506 U.S. 56, 61–62, 68–70 (1992). In *Soldal*, deputies assisted a landlord in removing a mobile home before the entry of an eviction judgment. *Id.* at 57–58. The Supreme Court held that the interference implicated the Fourth Amendment even without an invasion of privacy and remanded for consideration of reasonableness. *Id*. at 60–62, 71–72.

The City's conduct here establishes that interference. Before the lockout, JRHA secured the House's gates and doors with its own padlocks and entered without City permission. (JRHA Decl., ¶ 11). In the House, JRHA conducted educational tours, inspected and maintained the House, cared for the Collection, and secured the gates and doors. (JRHA Decl., ¶¶ 17–18). But no more. On or after March 12, 2026, City locks appeared on the gates and doors, accompanied by signs prohibiting entry and threatening prosecution with an audio and video camera directed at the House. (JRHA Decl., ¶¶ 11–12). Detective Scroggins tracked down JRHA board member Ms. Foreman-Green to inform her that the City claimed ownership of the House and its contents, that entry without City authorization

constituted criminal trespass, and that removal of property could constitute theft. (JRHA Decl., ¶¶ 14–15).

The City Council's action to seize ownership of the House has been a source of policy. Georgia law authorizes a municipality's governing authority to adopt resolutions concerning its property and affairs, subject to constitutional, charter, and general-law limits. O.C.G.A. § 36-35-3(a). The City's charter vests "legislative authority of the government of the City of Rossville" in "a city council" ("Council"). Rossville, Ga., Code of Ordinances art. 2, § 2.10. The Mayor and Council adopted the "House ownership" work program; the City eventually reported that task complete. The Council later adopted Resolution No. 740 with the clear intent to seize or otherwise restrict JRHA's ownership rights with respect to moving the House. (Compl., Ex. B-1, at 85, 118, 134; Ex. B-2, at 94).

The City's later enforcement connects that formal action to the seizure. The City publicly describes the House as a city-owned monument under Resolution No. 740. Detective David Scroggins communicated the City Attorney's instruction that the City owned the House and its contents. (Compl., Ex. S; JRHA Decl., ¶ 14). City-controlled locks, prosecution threats, and administrative action implemented the same ownership position across municipal City functions. (JRHA Decl., ¶¶ 11, 15–16). Together, these acts support an inference that the lockout enforced the governing body's ownership decision, rather than an employee's independent choice. *See*

*Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016); *Doral 10, LLC v. City of Doral*, No. 20-13528, 2023 WL 6891270, at *1, 4 (11th Cir. Oct. 19, 2023).

Whether a seizure is reasonable depends on the private and governmental interests involved. *Soldal*, 506 U.S. at 71. Here, the City has no viable ownership interest in the House to justify the property it seized. The City's initial and continuing interference with JRHA's ownership interest in the House is unconstitutional. The JRHA holds legal title to the House and the Ground Lease preserves JRHA's separate ownership of the House and its property. The City has violated JRHA's right against unreasonable government seizure of its property.

**d. <u>Federal and State Procedural Due Process Violation Claims</u>**

It is well established that both the federal and Georgia Constitutions prohibit the state from "depriving any person of life, liberty, or property, without due process of law." *Atlanta City Sch. Dist. v. Dowling*, 266 Ga. 217, 218 (1996); accord *Schumacher v. City of Roswell*, 344 Ga. App. 135, 138 (2017); *see* U.S. Const. amend. XIV, § 1 ("... nor shall any State deprive any person of life, liberty, or property, without due process of law ...."); Ga. Const., art. I, § I, ¶ I ("No person shall be deprived of life, liberty, or property except by due process of law."). To prevail on a claim alleging denial of procedural due process, the claimant must prove three elements: 1) deprivation of a constitutionally protected liberty or property

interest; 2) state action; and 3) constitutionally inadequate process. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994).

Due process entitles an individual to notice and some form of hearing before state action may finally deprive them of a property interest. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (emphasis added)).

First, JRHA has owned the House since the 1962 conveyance of that property and possesses a constitutionally protected liberty and property interest in the House. Second, by enforcing posted "No Trespassing" signage and directing a police detective to inform JRHA leadership that accessing the House without City authorization is a criminal trespass, the City's state action has implicated JRHA property ownership rights and JRHA member liberty. Third, due process is therefore needed, but there is no procedure provided for the recipient of a trespass warning to challenge that warning or for the warning to be rescinded. As to JRHA's property interest, the City has not initiated any legal proceedings for which JRHA has been afforded notice and an opportunity to be heard on the taking of the House.

These facts are similar to those in *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1268 (11th Cir. 2011), in which there was no procedural means to challenge a no trespass warning, and there was no post-deprivation procedure to satisfy the requirements of the Due Process Clause. "The trespass warnings are intended to serve instantly as some kind of restraining injunction . . . A challenge to a trespass

charge in state court does not equal a challenge to the validity of a trespass warning. . . .” *Id*. The City has left the JRHA with no adequate state remedies and the *McKinney* rule is inapplicable here. Therefore, the JRHA has a high likelihood of success on the merits of its Due Process Clause violation claims.

**ii. Counts IV and V: JRHA Should be Declared the Proper Owner of the House and Equitable Relief Should be Granted**

The Court may declare the parties’ rights in an actual controversy. 28 U.S.C. § 2201(a). To determine whether there is an actual controversy, courts look to “whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” *Maryland Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273 (1941). Georgia law requires the Ground Lease to be read as a whole and each provision to be understood in context. *Archer W. Contractors, Ltd. v. Estate of Pitts*, 292 Ga. 219, 224 (2012). This rule requires the Court to consider the land-reversion provision together with JRHA’s express right to remove the House. (Compl., Ex. H, ¶¶ 3, 8).

The Ground Lease identifies the leased “premises” as land. (Compl., Ex. H, ¶¶ 1, 8). Paragraph 8 separately permits JRHA to remove the House and its other property upon termination, indicating a clear intent that the House remain removable. (Compl., Ex. H, ¶ 8). Reversion of the leased land therefore does not itself convey JRHA’s House to the City. (Compl., Ex. H, ¶¶ 1, 3). The City’s 2004

meeting notes likewise acknowledge that it did not own the House at the expiration of the Ground Lease. (Compl., Ex. M). Ms. Foreman-Green knows of no authorized conveyance of JRHA's property to the City. (JRHA Decl., ¶ 7).

The City's ownership claim and continued exclusion present an immediate dispute over JRHA's right to possess and use the House. (JRHA Decl., ¶¶ 11, 14–16). Equitable relief enforces the substantive rights protected by JRHA's underlying constitutional claims. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). The Georgia Constitution's Just Compensation Provision also permits an injunction to halt a taking where the government has not invoked eminent domain. *Dep't. of Transp. v. Mixon*, 312 Ga. 548, 548–49 (2021). Accordingly, JRHA is likely to establish that it retains ownership of the House and is entitled to declaratory and equitable relief on its underlying constitutional claims.

**iii. Counts IX and X: The City's Actions Constitute Trespass and Conversion under Georgia Common Law.**

Georgia law protects an owner's possession and enjoyment of property against unlawful interference. O.C.G.A. § 51-9-1; *Tacon v. Equity One, Inc*. 280 Ga. App. 183, 188 (2006). A trespass caused by an intended act need not rest on negligence. *Tacon*, 280 Ga. App. at 188. Conversion occurs when a defendant wrongfully exercises dominion over another's personal property in a manner inconsistent with the owner's rights. *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga.

259, 261 (1987). Further, the City's conduct also supports a waiver of sovereign immunity for trespass amounting to an uncompensated public taking. See *City of Atlanta v. MLK Props., LLC*, 372 Ga. App. 210, 216–17 (2024).

The City claims the House as a city-owned monument while excluding JRHA from the House and Collection. (Compl., Ex. S; JRHA Decl., ¶¶ 11, 14–16). This appropriation supports the same taking alleged in Count VII. Accordingly, JRHA is likely to succeed on its trespass and conversion claims.

**B. The City's Continuing Exclusion Causes Irreparable Harm to JRHA.**

An injury is irreparable when monetary relief cannot undo it. *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). The injury must be actual and imminent and cannot be presumed solely from an asserted constitutional violation. *Siegel*, 234 F.3d at 1176–77. The injury may include opportunities that cannot be restored. *Ga. Coal. for the Peoples' Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018).

JRHA is prevented from using its House and Collection to perform its preservation and educational tours and work, as it has done for more than sixty (60) years. (JRHA Decl., ¶¶ 2, 17–19, 25). Damages cannot restore the culturally significant events, announcements, or educational opportunities that could have occurred at the House but are lost due to the City's exclusion and occupation since March 2026. Importantly, the House and some of its contents are priceless historic artifacts that are unique, nonfungible, and a vital part of Cherokee Nation history.

There is no just compensation or damages amount for priceless property such as this. JRHA was founded for the sole purpose of stewarding the House into the next generation. The Association's name *is* "John Ross House." Without the House, JRHA is a non-profit with an unperformable mission.

Without JRHA's historical and cultural knowledge and preservation resources at work, the House will suffer damage and neglect. While this matter moves toward final resolution through the Court, the House will be negatively impacted and deteriorate if the City is permitted to continue its deprivation. Recently, from outside the House, JRHA could see that the City has directed its jail inmates to cut down garden plants inside the fence that have Cherokee significance, presumably because the City either lacks the knowledge, the financial resources, or the care to properly maintain the House garden. The City has demonstrated that it will not properly maintain the garden, so it will certainly not properly preserve the House. The House needs the JRHA and its supporters to provide continued stewardship during the pendency of this matter.

The John Ross House Association is experiencing ongoing irreparable harm to its ownership interest, its mission, and to its primary asset: The John Ross House and its contents. Therefore, preliminary injunctive relief should be granted to prevent the immediate and continuing injuries to JRHA and its property.

### C. The Balance of Harms Favors Restoring JRHA's Access Rights.

The Court must weigh JRHA's injury against the harm the proposed injunction would cause the City. *Winter*, 555 U.S. at 24.

Without relief, JRHA has had its House taken and lost its right to access and exercise ownership over the House and its contents. As such, JRHA is unable to fulfill its mission or to independently offer educational tours or perform regular necessary care of these artifacts for the benefit of the public.

With preliminary injunctive relief, the City's control of the House is returned to the status quo that existed prior to the City's improper March 2026 actions. (JRHA Decl., ¶¶ 18–19, 27); *see* Section IV.E, *infra*. The Proposed Order thus addresses JRHA's continuing injury without causing any harm to the City. In fact, JRHA would resume all maintenance and relieve the City jail inmates from destroying the garden. The balance of harms weighs in favor of injunctive relief, as the City bears no potential harm.

**D. JRHA Control of the House Serves the Public Interest and Outweighs any Potential Harm.**

The public interest and balance of harms inquiries overlap when the government is the opposing party. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).

Here, the public benefits from the preservation and education JRHA provides through the House and its contents when under JRHA control. (JRHA Decl., ¶¶ 17, 19, 25). However, since March 2026, the City has posted "No Trespassing" signs

threatening criminal prosecution for entry and installed an audio/video camera posted in front of the House with further admonition. The City's exclusive municipal actions have harmed JRHA as the House owner and the public.

The requested injunctive relief would allow JRHA to resume educational tours and guided access for the public, and regular preservation work for future generations, while the Court determines the outcome of the constitutional violations and other claims alleged. *See* Section IV.E, *infra*.

**E. The Injunction Should Restore the Pre-Lockout Status Quo.**

JRHA requests restoration of its pre-lockout access and control. The Ground Lease's treatment of JRHA's property and the absence of justification for the exclusion clearly favor that interim restoration. *See* Section IV.A, *supra*. The request seeks relief from the taking and seizure pending adjudication.

The order should identify the property and the required and prohibited acts, rather than merely directing compliance with the law. Fed. R. Civ. P. 65(d)(1); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996). JRHA requests the terms set out in its Motion, paragraphs (a)–(e), until final judgment or further order.

The requested restraints would protect the House and Collection against interference and disposition, prosecution threats, and nonconsensual recording at private property as specified in the Motion, paragraph (a).

Restoration should include independent access, possession, and operational control, access across the grounds, and coordinated replacement of City locks with JRHA locks to maintain security. See Motion, paragraphs (b)–(c).

The Court may set security or require none where appropriate. *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 974 (11th Cir. 2005). As a non-profit organization and rightful owner of the House with over half a century of demonstrated stewardship of the structure, JRHA requests waiver of security or nominal security. Any security should reflect demonstrated costs or damages from wrongful restoration of operations. Fed. R. Civ. P. 65(c). If security is required, JRHA will satisfy such security before the injunction takes effect.

## V. <u>CONCLUSION</u>

WHEREFORE, JRHA respectfully requests an injunction preserving the House and Collection and restoring independent access, possession, and operational control per the terms set out in Section IV.E, with waiver or nominal security. Alternatively, JRHA requests severable preservation, inspection, and inventory relief pending a prompt further hearing on ongoing access and control, together with such other relief as the Court deems proper.

Dated: October 7, 2026

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Melissa M. Kirby*
Melissa M. Kirby | GA Bar No. 508999
Alan C. Cates (*PHV forthcoming*)
Daniel J. Esquivel (*PHV forthcoming*)
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
(423) 266-5500-Telephone
Melissa.Kirby@huschblackwell.com
Alan.Cates@huschblackwell.com
Daniel.Esquivel@huschblackwell.com

and

Ryan Burke | GA Bar No. 336130
Husch Blackwell LLP
3550 Lenox Rd NE, Suite 2100
Atlanta, GA 30326
(404) 850-5317-Telephone
Ryan.Burket@huschblackwell.com

***Attorneys for John Ross House Association***

## CERTIFICATION OF COMPLIANCE

Pursuant to L.R. 7.1(D), N.D. Ga., counsel for Plaintiff hereby certifies that the foregoing document has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in L.R. 5.1(C).

**HUSCH BLACKWELL LLP**

*/s/ Melissa M. Kirby*
Melissa M. Kirby | GA Bar No. 508999